IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LYNDON A. RAINES, et al.,

        Plaintiffs,

v.                                              CIVIL ACTION NO. 2:22-cv-00338

SUBWAY DEVELOPMENT OF WV, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Plaintiffs initially filed their Complaint in the Circuit Court of Kanawha County alleging nine substantive counts against Defendants. As Plaintiffs recognize, the substantive claims can be divided into two categories: ERISA[1]/ERISA-related claims, and non-ERISA state law claims. *See* [ECF No. 8, at ¶ 2]. Counts I (wrongful discharge), II (disability discrimination in violation of the West Virginia Human Rights Act), III (intentional infliction of emotional distress), and IX (loss of consortium) make up the non-ERISA claims. The ERISA/ERISA-related claims are Counts IV (late production of information under ERISA § 502(a)(1)(A)), V (recovery of pension plan benefits under ERISA § 502(a)(1)(B)), VI (breach of fiduciary duty under ERISA § 502(a)(3)), VII (negligent administration of pension plan under West

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, codified at 29 U.S.C. § 1001 *et seq.*

Virginia law), and VIII (breach of fiduciary duty under West Virginia law). Defendants removed this case to this court on August 15, 2022, alleging that there is federal jurisdiction over the ERISA claims pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over the non-ERISA claims pursuant to 28 U.S.C. § 1367(a). Defendants later filed a Motion to Dismiss Counts VII and VIII [ECF No. 5] and Plaintiffs filed a Motion to Remand Counts I, II, III, and IX[2] to state court [ECF No. 8]. Both of the motions have been fully briefed and are now ripe for decision. For the reasons that follow, the Court **GRANTS** both of the Motions. [ECF Nos. 5, 8].

I. Relevant Facts

Plaintiff Lyndon Raines worked for Defendant Subway Development of WV from August 1997 until July 2020. He was initially hired by Subway Development's owner, Defendant Gregory Hammond, as a Field Consultant but was later promoted to Director of Operations, a position Mr. Raines describes as "second-in-charge only to Mr. Hammond." [ECF No. 1-1, at ¶ 8]. In addition to their professional relationship, Mr. Raines and Mr. Hammond also "became close personal friends," which included things like vacationing together at Mr. Hammond's beach house. *Id.* ¶¶ 9–10.

In May 2020, Mr. Raines became ill and, after various medical visits, was diagnosed with atrial fibrillation. As a result of his condition, Mr. Raines spent 19 days in the intensive care unit in May 2020, and an additional 13 days in the ICU in

---

[2] The Complaint also includes claims for exemplary damages (Count X), Prejudgment Interest (Count XI), and Attorney's Fees under ERISA § 502(g)(1). Plaintiffs' Motion to Remand also asks to remand Counts X and XI. Because these counts seek damages for the substantive state law claims, they follow the substantive claims to which they relate. Therefore, while I do not discuss the damages claims further, Counts X and XI are also remanded.

June 2020. Mr. Raines' medical providers determined he needed a heart transplant, and he was ultimately placed on a ventilator to sustain his life. Even once he was released from the hospital, Mr. Raines wore a LifeVest, a wearable defibrillator, and required the assistance of a home-health nurse while awaiting his heart transplant.

The Complaint alleges that as soon as he became ill, Mr. Raines contacted Mr. Hammond to inform him of his medical condition. Mr. Raines and his wife, Plaintiff Krista Raines, kept in contact with Mr. Hammond and Mr. Hammond's wife throughout the hospitalization and recovery at home. Though Mr. Raines was unable to work during this time, "Subway had no employment policies whatsoever, whether formal or informal, including leave policies or reporting requirements regarding leave." *Id.* ¶ 22. Therefore, aside from his communication with Mr. Hammond, Mr. Raines "had no way of knowing what to do with respect to his required leave." *Id.* In July 2020, Mr. Hammond called Mr. Raines and told him he was fired from his position at Subway Development. Mr. Hammond requested that Mr. Raines meet him at the Subway Development office in Saint Albans, West Virginia. Mrs. Raines drove to the meeting, and Mr. Hammond gave her the termination letter when Mr. Raines was unable to exit the vehicle. Plaintiffs claim that the whole ordeal took an emotional toll on Mr. Raines and caused Mrs. Raines to be concerned that he may "have a cardiac event in the car." *Id.* ¶ 30.

After his employment with Subway Development was terminated, Mr. Raines claims he immediately requested information about his pension plan. *Id.* ¶ 39. The Complaint explains that Subway Development started the pension plan in 2008 to

3

provide a retirement benefit to employees. *Id.* ¶ 34. Mr. Hammond was the plan administrator at all relevant times, and he worked closely with Subway Development's longtime accountant, Chris Pasero. *Id.* ¶¶ 35–36. Mr. Raines claims that throughout his employment, he was never provided "notice – formal or otherwise – of Pension Plan information, including without limitation, the Pension Plan's performance or Mr. Raines' benefit amount" even though "he routinely requested such information." *Id.* ¶¶ 37–38.

Mr. Raines' requests for information about his pension benefit after his employment was terminated were allegedly no different. Plaintiffs claim they requested Mr. Raines' pension benefit payout "repeatedly for over a year and a half, . . . but they not only failed to receive the payout, they also failed to receive any information whatsoever regarding the Pension Plan" or benefit amount until sometime around May 2022. *Id.* ¶ 40. At that time, Mr. Raines was told that his benefit amount was $78,000, much less than Mr. Raines expected. *Id.* ¶¶ 40–41.

Plaintiffs allege that once Defendants became aware of Plaintiffs' claims in this case, Subway planned to terminate its Pension Plan on April 30, 2022. *Id.* ¶ 43. At the same time, Plaintiffs claim they received a new benefit amount in May 2022 of $185,378.21. *Id.* ¶ 44. Because of the financial hardship Plaintiffs had experienced after Mr. Raines' employment was terminated, Mr. Raines executed the necessary documents "to obtain the newly-provided lump sum benefit amount" in June 2022. *Id.* ¶ 45.

Separately, Plaintiffs claim that once Mr. Hammond became aware of their claims in this case, he "harassed and/or sought to intimidate Plaintiffs," *id.* ¶ 46, and "used threats and insults . . . to attempt to intimidate Plaintiffs into foregoing their lawsuit." *Id.* ¶ 77. And Plaintiffs claim that "as a result of [Mr.] Hammond's conduct as related to Mr. Raines, Mr. Raines has suffered severe, extreme, ongoing emotional distress," leading to Ms. Raines' loss of consortium. *Id.* ¶ 118.

## II. Defendants' Motion to Dismiss Counts VII and VIII

In their Motion to Dismiss, Defendants seek dismissal of Plaintiffs' claims for negligent administration of the pension plan (Count VII) and breach of fiduciary duty under West Virginia law (Count VIII). Defendants claim these counts are preempted by ERISA because Plaintiffs seek to use them as "alternate enforcement mechanisms." [ECF No. 6, at 5 (citing *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342 (4th Cir. 2007))]. The Motion [ECF No. 5] is **GRANTED**.

### A. Legal Standard

#### 1. Motions to Dismiss

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion

5

to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. In meeting this standard, the complaint "need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

### 2. ERISA Preemption

Congress intended ERISA to comprehensively and uniformly regulate employee benefit plans. Therefore, the scope of its preemption is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). Specifically, ERISA's "preemption clause" provides that "[e]xcept as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ." 29 U.S.C. § 1144(a) (emphasis supplied). Because ERISA preemption is intended to be broad, courts routinely find that a state law "relates to" a benefit plan "if it has a connection with or reference to such a plan." *Metropolitan Life Inc. Co. v. Mass.*, 471 U.S. 724, 739 (1985) (citation omitted). The connection required need not be obvious on the face of the state law, nor does the state law need to be one that was "specifically designed to affect employee benefit plans." *Pilot Life Ins. Co.*, 481 U.S. at 47–48 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)). As the United States Court of Appeals for the Fourth Circuit has explained,

> Congress intended ERISA to preempt *at least* three categories of state law: (1) laws that "mandate[] employee benefit structures or their administration"; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) "laws providing alternate enforcement mechanisms" for employees to obtain ERISA plan benefits.

*Wilmington Shipping Co.*, 496 F.3d at 342 (emphasis in original) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658–59 (1995)). Therefore, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . is pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). And parties may not "avoid ERISA's preemptive reach by recasting otherwise preempted claims as state-law contract and tort claims." *Wilmington Shipping Co.*, 496 F. 3d at 341.

### B. Discussion

Count VII alleges negligent administration of the pension plan under West Virginia law. Because the claim relates to the pension plan at issue, "Plaintiffs concede that such cause of action is preempted by ERISA." [ECF No. 22, at 1 n.1]. Count VII is **DISMISSED**.

Count VIII alleges breach of fiduciary duty against Mr. Hammond and Subway Development. The Complaint alleges as follows:

> 113. Under West Virginia law, a violation of the fiduciary relationship between, or by, an entity as to its employees, may result from oppressive conduct, which is conduct that departs from the standards of good faith and fair dealing inherent in the concept of a fiduciary relationship.
>
> 114. In their negligent and/or intentional mistreatment of Mr. Raines and negligent mismanagement of the

7

> Pension Plan . . . Subway and Hammond violated their fiduciary duties to Mr. Raines *by failing to provide timely, accurate Pension Plan information and documentation and by failing to allow Mr. Raines to access his benefit amount for over a year and a half.*

[ECF No. 1-1, at 16 (emphasis supplied)]. Defendants argue this claim must be dismissed because it is preempted by ERISA in that it relates to the pension plan and is an alternate enforcement mechanism.

While Plaintiffs admit that the claim relates to the pension plan *in part*, Plaintiffs claim that it also "pertains to conduct . . . completely unrelated to the Pension Plan." [ECF No. 22, at 7]. In support of their argument, Plaintiffs point to paragraph 114 of the complaint wherein they allege that Mr. Hammond and Subway Development "negligent[ly] and/or intentional[ly] mistreat[ed]" Mr. Raines. [ECF No. 1-1, at ¶ 114]. Because Plaintiffs also included the boilerplate language that they "reallege and incorporate by reference the allegations contained in the preceding paragraphs" of the Complaint, Plaintiffs argue their claim in Paragraph 114 can be read to include a claim of breach of fiduciary duty based on Mr. Hammond and Subway Development's alleged negligent or intentional mistreatment of Mr. Raines. Plaintiffs' response in opposition to the motion suggests that a "special relationship" existed between Mr. Raines and Mr. Hammond, through their "close personal friendship," such that Mr. Hammond had a fiduciary duty to act in the best interest of Mr. Raines. [ECF No. 22, at 7–8]. Plaintiffs argue the Complaint is "replete with factual allegations contending that Defendants failed to act for the benefit of Mr. Raines," thus satisfying the pleading standard.

Plaintiffs' argument in this regard borders on frivolous. Plaintiffs themselves repeatedly characterize Count VIII as an "ERISA-related claim." [ECF No. 8, at 3 ("Counts VII and VIII (the 'ERISA-Related Claims') are state law claims which also arise from Defendants' administration and management of Mr. Raines' pension plan."); ECF No. 9, at 3]. And paragraph 114 cannot be read to allege anything other than a claim "related to" the pension plan. While Plaintiffs seek to highlight only part of the first sentence, the entire paragraph makes clear that their claim is that Defendants "violated their fiduciary duties to Mr. Raines *by failing to provide timely, accurate Pension Plan information and documentation and by failing to allow Mr. Raines access to his benefit amount for over a year and a half.*" [ECF No. 1-1, at ¶ 114 (emphasis supplied)]. Plaintiffs' claim does not give fair notice that it is based on anything other than Defendants' alleged failures relating to the pension plans. Count VIII is "related to" the pension plan and is therefore preempted by ERISA. Count VIII is **DISMISSED**.

### III.  Plaintiffs' Motion to Remand Counts I, II, III, and IX

Plaintiffs seek to remand Counts I, II, III, and IX, the "State Law Claims," [ECF No. 8, at 2], to state court. Plaintiffs argue these claims arise from "separate factual circumstances" than the ERISA claims and that the court therefore lacks supplemental jurisdiction over them. Defendants argue the claims do arise from a "common nucleus of operative fact," making supplemental jurisdiction appropriate. For the reasons explained below, Plaintiffs' Motion [ECF No. 8] is **GRANTED**.

### A. Legal Standard

A defendant may remove to federal court any case filed in state court over which federal courts have original jurisdiction. 28 U.S.C. § 1441. When removing a case to federal court, the defendant bears the burden of establishing federal jurisdiction in the Notice of Removal. *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction must be strictly construed, and "[i]f federal jurisdiction is doubtful, a remand is necessary." *Id.* (citations omitted).

A federal court has jurisdiction over a removed case if it would have had original jurisdiction over the case, whether through federal question or complete diversity.[3] 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over all civil actions arising under the laws of the United States. For purposes of § 1331, an action arises under the laws of the United States if a federal claim appears on the face of a well-pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, Plaintiffs' ERISA claims establish federal question jurisdiction.

When, as here, the complaint includes both federal claims and state law claims, the federal court *may* have supplemental jurisdiction over the state law claims. Supplemental jurisdiction exists as to "all other claims that are so related to [the federal claims] that they form part of the same case or controversy under Article III

---

[3] There is no allegation that federal jurisdiction rests on complete diversity in this case. Rather, the basis is federal question jurisdiction because Plaintiffs' Complaint alleges claims arising under ERISA, a federal statute.

of the United States Constitution." 28 U.S.C. § 1367. The Supreme Court has explained that for supplemental jurisdiction to exist, "[t]he state and federal claims must derive from a common nucleus of operative fact," "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988). To share a common nucleus of operative fact, the claims must have more than "superficial factual overlap." *Shavitz v. Guliford Co. Bd. of Educ.*, 100 F. App'x 146, 150 (4th Cir. 2004). And certainly, where the claims "are separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to" each other, there is no supplemental jurisdiction. *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 848 (4th Cir. 1974).

Additionally, the exercise of supplemental jurisdiction is discretionary. *See Gibbs*, 383 U.S. at 726. Even where there is supplemental jurisdiction, "[t]hat power need not be exercised in every case in which it is found to exist." *Id.* The justification of federal supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Id.* And "there may be reasons independent of jurisdictional considerations" that justify declining to exercise supplemental jurisdiction. *Id.* This is because the doctrine of supplemental jurisdiction is "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon*, 484 U.S. at 350.

11

B. Discussion

Plaintiffs move to remand Counts I, II, III, and IX, arguing that these claims do not arise from a "common nucleus of operative fact" with the ERISA claims. Defendants oppose the motion and argue that all claims arise from "an employment relationship gone awry," and are therefore closely related enough to satisfy the "common nucleus" test. [ECF No. 20, at 7].

Count I alleges wrongful discharge in violation of "the West Virginia Human Rights Act and/or Public Policy". [ECF No. 1-1, at 8]. Plaintiffs allege that Mr. Raines was "disabled per West Virginia law" because he was "undergoing extensive treatment for heart and other organ failure." *Id.* ¶ 55. And Plaintiffs allege that Mr. Hammond and Subway Development terminated Mr. Raines' employment in contravention of West Virginia's law and public policy against disability discrimination. *Id.* ¶ 53–57. Similarly, Count II alleges disability discrimination in violation of the West Virginia Human Rights Act and public policy. *Id.* ¶¶ 58–67. In support of this claim, Plaintiffs assert that Mr. Raines was a member of a protected class due to his alleged disability, that Defendants "did not engage in an interactive process with Mr. Raines" when he tried to communicate his medical status, and that Defendants did not provide any reasonable accommodation for Mr. Raines. *Id.* ¶¶ 63–65.

These counts make no mention of the pension plan or Defendants' alleged failures with respect to ERISA, and Plaintiffs argue there is no common nucleus of operative fact between these claims and the ERISA claims. Defendants agree that

Counts I and II "do not expressly refer to the Pension Plan," and "arise from 'Defendants' [overall] willful, wanton, and reckless discriminatory conduct.'" [ECF No. 20, at 4]. But, Defendants argue that supplemental jurisdiction exists over all of the state law claims, as a whole, because, in their view, Count III "bridges both termination conduct and Pension Plan conduct." *Id.* The law does not permit such a broad analysis. Rather, supplemental jurisdiction must be analyzed claim by claim. *See* 28 U.S.C. § 1367 (jurisdiction exists as to "all other claims that are so related"). Reviewing Counts I and II, it is clear that those counts do not even have a "superficial factual overlap" with the ERISA claims. *Shavitz*, 100 F. App'x at 150. Other than the employee-employer relationship, Counts I and II have nothing in common with the ERISA claims. Contrary to Defendants' assertion, the "employment relationship gone awry" is not enough to satisfy *Gibbs* or 28 U.S.C. § 1367. Plaintiffs could try Counts I and II and never need to make any mention of the facts alleged in the ERISA claims. Whether Defendants provided information to Mr. Raines regarding his pension plan during and after his employment is irrelevant to whether his employment was unlawfully terminated on the basis of a disability. Counts I and II "are separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to" the ERISA claims. *Hales, Inc.*, 500 F.2d at 848. Because there is no "common nucleus of operative fact," Counts I and II must be remanded.

As for Counts III and IX, the question is arguably closer. Count III alleges intentional infliction of emotional distress. While most of the allegations in Count III

relate to the way in which Subway Development and Mr. Hammond terminated Mr. Raines' employment, Plaintiffs also allege that "after Defendant [Hammond] was put on notice of Plaintiffs' intended claims, Mr. Raines[4] used threats and insults as detailed herein to attempt to intimidate Plaintiffs into foregoing their lawsuit." [ECF No. 1-1, at ¶ 77]. And Plaintiffs allege that all of Mr. Hammond's conduct "was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," and proximately caused Mr. Raines to suffer "severe emotional distress embarrassment, indignity, humiliation, and mental anguish." *Id.* ¶ ¶ 78–79. Because "Plaintiffs' intended claims" include the ERISA claims, there is arguably some factual overlap between Count III and the ERISA claims. The same is true of Count IX. In that count, Mrs. Raines claims loss of consortium "[a]s a result of Hammond's conduct as related to Mr. Raines . . . which has impacted his role as Mrs. Raines' spouse." *Id.* ¶ 118. Because Mr. Hammond's conduct included allegedly withholding pension plan information, there could be some factual overlap between the ERISA claims and Count IX.

Even with this minimal factual overlap, I am not convinced the ERISA claims and Counts III and IX are so closely related that they share a common nucleus of *operative* fact. I need not decide that question, however, because even assuming they did, I would decline to exercise supplemental jurisdiction over them. The exercise of supplemental jurisdiction is discretionary to "allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns

---

[4] Presumably, Plaintiffs intended to allege that it was Mr. Hammond who used threats and insults to intimidate Plaintiffs.

14

and values" including "the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Carnegie-Mellon*, 484 U.S. at 350, 357. Because this court entirely lacks supplemental jurisdiction over Counts I and II, those claims must be remanded to state court. The claims and evidence supporting Counts III and IX are closely intertwined with Counts I and II and share only a tenuous nexus with the ERISA claims. It is most sensible, then, to remand all of the state law claims to be disposed of together in state court. Plaintiffs' Motion to Remand [ECF No. 8] is **GRANTED**. Because the court has original jurisdiction over the ERISA claims, Defendants' removal of the action was not baseless and the court declines to award attorney's fees.[5] And, because Plaintiffs make clear in their briefing that Mrs. Raines' only claim in this case is Count IX, [ECF No. 9, at 6 n.3; ECF No. 21, at 3–5], she is **DISMISSED** from the remaining action in this court.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Counts VII and VIII is **GRANTED**. [ECF No. 5]. Plaintiffs' Motion to Remand Counts I, II, III, IX, X, and XI is **GRANTED**. [ECF No. 8]. Because she has no remaining claims in this court, Plaintiff Krista Raines is **DISMISSED**. Counts IV, V, VI, and XII remain pending.

---

[5] The court also notes that while Plaintiffs' Motion [ECF No. 8] seeks fees and costs pursuant to 28 U.S.C. § 1447, Plaintiffs made no argument regarding their entitlement to fees and costs in their memorandum of law [ECF No. 9]. Defendants' Response [ECF No. 20] noted Plaintiffs' failure in this regard and argued why an award of fees and costs was inappropriate here. In their Reply [ECF No. 21], Plaintiffs again failed to address the issue of fees and costs.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 29, 2022

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE